WILKERSON v. STATE.

In Banc. Nov. 14, 1949.

No. 37341 ((42 So. (2d) 745)

**W. T. Weir**, for appellant.

**George H. Ethridge**, Assistant Attorney General, for appellee.

**Roberds, J.**

Appellant was convicted of burglary. He urges us to reverse and remand the case because (1) error was made by the trial court in the method of selecting and empanel-

ing the jury which convicted him, (2) the verdict of guilty is against the great weight of the evidence, and (3) the property taken during the course of the burglary was not identified.

On the first question, court started on Monday morning, March 21, 1949. Sixty-two persons, whose names had been duly drawn from the jury box, reported for jury duty. That number had been exhausted in empaneling the grand and two petit juries. The court had been trying cases with the two petit juries. Apparently this case was tried on Friday of the first week. Appellant was indicted with two other persons. Severance was granted but the relation of the jurors to the other two accused parties was necessarily pertinent to their qualifications to try this defendant. The trial judge explained the situation in this statement: "In the trial of this case today, in the afternoon, as we have undertaken to get a jury in the case, several jurors have been disqualified on account of relationship to one of the persons named in the indictment, and the panels have been exhausted without the court being able to procure a jury". He then directed the sheriff to summon six "qualified persons of good intelligence, sound and fair character from which to make up this jury". It is noted the sheriff was not directed as to the manner or method of summoning the six qualified persons. He did, as a matter of fact, select them from the courtroom. However, the record discloses that they were resident citizens of three of the supervisors' districts of the county. All possessed the qualifications of jurors. Defendant moved the court to draw the names from the jury box and require the sheriff to go out into the county and summon those so drawn. The refusal of the trial judge to do that and the method adopted here in drawing the six jurors constitute reversible error, according to the contention of appellant. The adopted method was justified by the cases of McCary v. State, 187 Miss. 78, 192 So. 442; Smith v. State, 196 Miss. 524, 18 So. (2d)

300. Under such circumstances the court is not required to cease functioning and wait until the sheriff can go about over the entire county and summon jurors. For this to be done and the jurors have time to get to court might take some two or three days, during which the business of the court would be at a standstill and the cost to the public and the litigants would be mounting.

As to the second question, the sufficiency of the evidence to sustain the conviction, Marcus Payne, jointly indicted with appellant, testified that on the occasion in question he, appellant and Martis Fulton, around ten or eleven o'clock on the night of the crime, planned the burglary of a gas and automobile service station owned by Cecil and Burlan Taylor, known as the Woco Pep Service Station, in the Town of Union; that about an hour thereafter they went to the station; that the witness broke through a window into the rest room and thence through a door to the sales room, and took therefrom the property hereinafter mentioned; that during this time appellant was watching, ready to give the alarm on the approach of any one; that witness carried the property a short distance and hid it; that he then went to the automobile, parked not far away, into which appellant had gotten, and they drove to and picked up the property; that they drove from the town and hid the property at different places along the way, some being hidden in the yard at the home of Fulton, appellant participating in these activities. Payne said defendant got part of the money

Viverett, night watchman of Union, testified he saw the three accused persons driving about the town in an automobile the night of the crime ". . . some twelve or fourteen times". He also gave this account of an interview with appellant: "When we went down to the place, I said 'Wilkerson, you been hard to catch, but we got you this time'. He said 'What you talking about?' and I said 'last night', and he said 'The service Station' and owned up to it."

Chesney, deputy sheriff, testified that when appellant was arrested he said "he had been with Fulton and Payne all night the early part of the night. That was Sunday night and he was telling me this on Monday, the 7th, and he said he had been with them all night when Wilkerson and Fulton were parked near the depot. And he said that Payne come around to the car about 2:30 or 3:00 and they went down the alley and behind the bank building and Wilkerson and Payne got out and got some stuff hid behind Hugh Martin's store and they come down the highway and he and Payne put some stuff under the church". Appellant also told him "they put some stuff under a bridge". It might be added here the officers found the property where the three accused said they had hidden it. Other evidence of the State implicated appellant in the crime, but we deem the foregoing sufficient.

Appellant was the only witness in his behalf. He admitted he was with Fulton and Payne on Sunday night and that they carried him home in an automobile; that the car stopped and Payne and Fulton brought to it from a place of hiding the stolen property and as they traveled towards his home these two parties hid the property under the bridge and at the church. In other words, he admits being with the other two but simply denies he received any of the property or had any part in the crime.

It is seen at once the evidence is abundant to justify the verdict of guilty. ▮▮ Appellant seems to contend that because he did not engage in the actual breaking—that he merely helped to plan the crime, watched and stood on guard while the other parties did the actual breaking and entry—that he cannot be guilty of burglary. That contention, of course, is not well taken.

On the third question, the identity of the stolen property, ▮▮ conceding, but not deciding, that it was essential for the State to identify it, the indictment described the property as five cartons of cigarettes, one pistol, two electric razors, money, etc., of the total value of $162.00.

564

The pistol, razors, a knife, and some of the money were definitely identified as property stolen from the gas station. Appellant contends that because the cigarettes were of standard brand and there were no marks to distinguish the stolen cigarettes from a similar standard brand, this should require his acquittal. More than one sufficient answer could be made to that, but it is enough to say there was no necessity of identifying the cigarettes. The other property was definitely and properly identified.

We find no error in the trial of this case.

Affirmed.